On the Merits.
Plaintiff’s counsel state her claim thus:
Cleophas Oomeau, the mortgage creditor of Gottlieb Miller, instituted executory proceedings against the property mortgaged, and during the pendency of those proceedings and before sale the debtor died. Thereafter the widow of deceased was made a party thereto, and the sale proceedings continued against her.
On the day of sale the widow filed a third opposition claiming a privilege superior in rank to that of the seizing creditor, securing her claim for one thousand dollars as the surviving widow of the deceased, in necessitous circumstances and entitled to be paid from the proceeds of sale, in preference to the seizing creditor.
To this third opposition several exceptions were filed on the part of Eliza Roy, the surviving widow of Oomeau — who had in the meanwhile departed this life — (1) no cause of action against the proceeds of sale in the sheriff’s hands; (2) that third opponent has disposed of her rights, as widow in necessitous circumstances, by a formal written act, of date December 23, 1891, and same is a complete bar to her recovery thereof; (3) that third opponent has, since the death of her husband, appropriated and disposed of the effects of his estate, and same constitutes a further bar to the assertion of her claim.
Contemporaneously therewith third opponent entered a special *1326 plea to the effect that she was altogether ignorant of ..any such document; but averring that if any such paper existed as imported a relinquishment of her homestead that same was executed and signed by her through error of fact and law, and that same was obtained by fraudulent representations of Oomeau to the effect that it was for her own benefit, she being at the time completely under his influence and control; that she never received any consideration therefor, and that same is null and void; and she prays to be relieved from its effects, as a fraud practised upon her.
(a) The record shows that on the filing of the third opposition an order was made directing the sheriff to retain in his hands, out of the proceeds of the sale of the property mortgaged, the sum of one thousand two hundred dollars to await the further order of the court in the premises. The seizure and sale against which this opposition was directed was based on an ordinary conventional mortgage, securing the payment of a promissory note of Miller for the sum of seven hundred dollars, dated June 12, 1885, and due on demand; and a similar note for one thousand one hundred and fifty dollars and seven cents dated October 5, 1839, and due at one day after date. But the act of mortgage contained the stipulation of no vendor’s lien.
Under those executory proceedings Oomeau became the adjudicatee of the mortgaged property on the 19th of December, 1891, and, under a written agreement between him and third opponent, he retained in his hands the one thousand two hundred dollars specified in the order of court, instead of making a deposit with the sheriff.
On the 23d of December, 1891 — only a few days after his purchase at sheriff’s sale — Oomeau conveys the same property to third opponent and Miss Mary Fisher — “ to each an undivided one-half ” — -on the following terms and considerations, to-wit:
“Mrs. Miller to pay for her undivided one-half interest in said property the sum of one thousand five hundred and sixty dollars, as follows, viz.: The sum of five hundred and sixty dollars, payable in twelve months from date, and one thousand dollars payable in one, two and three years from date, with eight per cent, interest from maturity, for which amounts notes are given as hereinafter set forth, payable to the vendor’s order and secured as hereinafter provided. Miss Fisher is to pay for her share of the property the sum of one thousand dollars, payable in one, two and three years,” for which she was to execute her notes secured by mortgage.
*1327 From the foregoing it is quite clear that third opponent’s claim was good in law, on the face of the papers, because the act of mortgage which was the subject of the executory proceedings contained no vendor’s lien, and her claim arose at the death of her husband pending the sale. The order of court directing the retention of the sum of twelve hundred dollars preserved her rights, and it was perfectly competent for the third opponent to consent for the mortgage creditor to retain the fund in his hands pending her opposition.
Such an agreement was recently recognized and enforced in the case of Bourgeois vs. Octave Jacobs, 45 An. 1310.
(b) The agreement of December 23, 1891, which is relied upon as showing that the third opponent parted with all of her rights as widow in necessitous circumstances, is unique and exceptional. It contains the following significant recital, viz.:
“Whereas, in executory proceedings of C. Oomeau vs. Gottlieb Miller, her deceased husband, she has filed a third opposition claiming the widow’s homestead of one thousand dollars in preference to all creditors; * * * and whereas, said Oomeau has sold to her the undivided one-half of the property seized and sold in said proceedings, for the price and sum of one thousand five hundred and sixty dollars, payable as above recited; and whereas, the price, terms and conditions aforesaid are a great advantage to her, in consideration thereof she hereby agrees and consents to assign, and by these presents does transfer and assign to said Oomeaux any and all amounts of money which she may be adjudged to be entitled to in virtue of her said third opposition.”
Bearing in mind the fact that Oomeau conveyed to Miss Mary Fisher one-half interest in the land for the price of one thousand dollars, and to third opponent the other half interest for the sum of one thousand five hundred and sixty dollars, it is difficult to appreciate “the great advantage” for which she agreed, on the self-same day, to assign to Oomeau her right to the one thousand dollars actually in his hands. Or, in other words, the third opponent having already paid, in notes, five hundred and sixty dollars more than her sister, for exactly the same quantity of land, she was so much favored by the operation that she voluntarily consented to relinquish one thousand dollars more. At that rate, the third opponent actually paid two thousand five hundred and sixty dollars, as against Miss *1328 Fisher’s payment of one thousand dollars. And in order to demonstrate that the one thousand five hundred and sixty dollars was a real and actual consideration for the land, the record attests that scarcely had one twelvemonth rolled by when the executrix of Comeau’s estate obtained an order of seizure and sale on the two notes first maturing and sent'her half interest to sale. We are thus enabled to see and appreciate “the great advantage” Mrs. Miller enjoyed in this transaction.
It is perfectly apparent that she did not receive one dollar in the way of consideration for the valuable right she apparently assigned to Comeau.
In treating of this question the District Judge says:
“ The evidence satisfies the court that the plaintiff” — i. e , the third opponent — “ although a woman of ordinary intelligence, had unlimited confidence in Oomeau, who possessed over her an influence which was calculated to cause her to abandon any and all rights which she might have at his simple bidding, or upon his representation that such a course was the best. The plaintiff swears that for many years neither she nor her husband conducted any business transaction or venture without the advice and counsel of Oomeau. That prior to the sale of Pointe Aux Loupe Springs property, and since, Oomeau always promised her that he would see to it that her claim for one thousand dollars, as widow in necessitous circumstances, should be secured to her, and that she relied, implicitly, upon his statements. That, at first, she had no attorney, because Comeau told her that she did not need one — that he and his attorneys would attend to the matter for her.
“ The court is also satisfied that the plaintiff never appreciated the effect of the act of renunciation of December, 1893, and that she signed the same upon the representations and promises made to her by Oomeau.
* * s;« * * *
“ But admitting that this renunciation was executed by Mrs. Miller, of her own free will and accord, and that she thoroughly understood its import, it is evident that it was made without consideration. She swears absolutely that she never received anything for her signature.”
For these reasons, amongst others, the District Judge overruled this exception, and our examination of the evidence has led us to the same conclusion.
*1329 .Nor is this the true theory of the ease in point of fact, but it is equally true in point of law; for this court recently decided that “the widow’s and minor’s portion, under Act March IT, 1852, is a provision for the destitute and can not be waived in favor of a creditor,” etc. Succession of Waddell, 44 An. 361.
Such a waiver or renunciation on the part of a destitute widow can not be readily presumed, and it is manifestly against public policy.
(c) With regard to the third exception we deem it sufficient to say that if the third opponent has appropriated and used any portion of the effects of the community since her husband’s death, that does not have the effect of an estoppel against her entire claim, but the value of such effects will be ascertained and credited against her on settlement.
All of the defendant’s exceptions having been overruled, he filed an answer pleading a general denial, accompanied by the following special defences, viz.:
1. That as Comeau is a creditor possessing the security of a vendor’s lien, he is entitled to be paid out of the proceeds of the sale of the property by preference.
2. That third opponent’s indebtedness to the estate of Miller amounts to one thousand five hundred and sixty dollars for the price of land sold to her, and she should be made to pay that amount before receiving any part of the one thousand dollars held in reserve under the order of the court.
As has already been shown neither of these defences are good, first, because the mortgage under which the first executory proceedings sent the land to sale contained no vendor’s lien, and the second was predicated on a conventional sale made to third opponent and Mrs. Fisher, long subsequent to the death of her husband and the acquisition of her right to a homestead.
And, in addition to this, the executrix of Comeau became the adjudicatee under the second seizure and sale, and the price yielded thereby was very nearly sufficient to discharge all the notes of the third opponent.
In summing up the evidence on the merits of the case the District Judge found that the “ evidence shows conclusively that at the time of the death of third opponent’s husband (she) was in necessitous circumstances, and that beyond the judgment obtained against her husband by Black for the recovery of the purchase price of furniture, *1330 which judgment was transferred to her by him, she had no property. Mrs. Miller swears that at the.time of her husband’s death the furniture sold by Black was worth forty-eight dollars, and that she has .been using same since her husband’s death. The court is of opinion that she should be charged with the value of it at the time of his death.
$ >}. * tfr * * ❖
“ It is also in proof that Mrs. Miller has collected, since the death of her husband, money due his estate amounting to fifty-four dollars and eighty-five cents * * * and consequently she should be charged with that amount also. The court therefore finds that the third opponent is entitled to receive from the succession of her husband the sum of eight hundred and ninety-seven dollars and fifteen cents, which, added to the total credits of one hundred and two dollars and eighty-five cents — the amount of her means at the time of her husband’s death — make up the total of one thousand dollars,”, etc., to which allowance she is entitled to receive as widow in necessitous circumstances.
We have examined the record and scanned the testimony of all the witnesses with great care, and feel satisfied that the opinion of the judge a quo is correct.
Judgment affirmed.